HENRY B. JOHNSON, Plaintiff, *v.* NATIONAL LIFE INSURANCE COMPANY, Defendant.

Supreme Court, New York County, January, 1934.

*Niles & Johnson* [*Henry B. Johnson* of counsel], for the plaintiff.

*Gleason, McLenahan, Merritt & Ingraham* [*J. W. Simpson, 2d,* and *Flynn L. Andrew* of counsel], for the defendant.

COTILLO, J. This case was tried before the court without a jury upon a stipulation that findings of fact and conclusions of law be waived, and that a verdict be directed with the same force and effect as though a jury were present.

The action is one brought by the plaintiff, an assignee of an

insurance agent, to recover from the defendant damages for breach of contract of employment.

The plaintiff's assignor claims that in the year 1931 the defendant, through Wells, Meissel & Peyser, Inc., the general agents of the defendant, employed the plaintiff's assignor to act as an agent for the defendant in soliciting life insurance to be placed with the defendant in the territory of Greater New York and Long Island; that pursuant to such employment the plaintiff's assignor applied for and procured, as required by section 91 of the Insurance Law of this State, a certificate of authority from the Superintendent of Insurance to represent the defendant as a life insurance agent; that prior to the securing of the certificate of authority the parties had executed a commission agreement; that the defendant had issued to all its agents, including the plaintiff's assignor, a circular offering a special policy eliminating aviation risks from coverage; that the essential elements of this offer were to induce agents to secure a substantial amount of new business as insurance companies had up to then been rejecting applications from persons using aeroplanes; that the plaintiff's assignor then solicited as agent for the defendant and secured from a prospect named Byrd an application for a twenty-year endowment policy of life insurance in the sum of $100,000 with the aviation risk excluded and the payment of the first quarterly premium; that the prospect was examined by the defendant's doctors and passed the examination successfully and that the application and advance premium were filed with the defendant; that the defendant refused to issue the policy and assigned as its reason for refusal the aviation risk; this rejection was on November 23, 1931; that the rejection by the defendant was not in good faith but was rejected because the defendant after receiving the application had decided not to issue policies with aviation risk excluded as proposed in its bulletin but to issue such policies only in special cases which might meet its approval.

The defendant denies the existence of any contract between the plaintiff's assignor and the defendant and denies the authority of Wells, Meissel & Peyser, Inc., to employ the plaintiff's assignor and further denies that Byrd was an insurable risk or that it rejected his application because of the aviation risk. This leaves to the court the following questions to be determined:

(1) Was there a contract between the defendant and the plaintiff's assignor?

(2) Was Byrd an insurable risk?

(3) Did the defendant reject the application of Byrd because of the aviation risk?

Taking up these questions in the order named, it is first necessary to examine the relations between the defendant and Wells, Meissel & Peyser, Inc., to determine the authority vested in the latter to bind the defendant and also to determine whether or not Wells, Meissel & Peyser, Inc., was acting on its own behalf or that of the defendant. An examination of the contract of agency between Wells, Meissel & Peyser, Inc., and the defendant, which is termed by the defendant as *"General Agents Contract,"* discloses the following provisions:

(1) The company hereby appoints and employs the general agent with the authority, powers and duties and subject to the terms, conditions and limitations herein set forth.

(2) He (the general agent) will develop and manage a general agency for the company and perform such duties in connection with the conduct thereof as may be properly required of him.

(3) Subject to the approval of the company he will employ sub-agents, herein termed agents, and such other assistants as may be reasonably required to efficiently operate the general agency.

(4) He will act *exclusively* for the company.

(15) He shall not incur any debt or liability against the company.

(36) The power of the general agent shall in no event extend further than is specifically stated in this agreement.

I think a reading of section 2 of this contract indicates that authority was given by the defendant (who it must be remembered is a corporation, a resident of and located in a foreign State) to its local general agent to employ not only assistants for the general agent but also subagents for the defendant itself. This would seem to be a logical conclusion in view of the precautions the defendant took to leave the final approval of such subagents to the company itself. It surely would seem highly improbable that an insurance company located in Vermont would or could in addition to making an original choice of a general agent have either the time or facilities for also choosing in the first instance subagents. I do not think that the contract entered into between the plaintiff's assignor and Wells, Meissel & Peyser, Inc., as general agent, can be construed as anything less than an agreement between the plaintiff's assignor and the defendant acting through Wells, Meissel & Peyser, Inc., its general agent in New York city. The contract is on a form designated special form 7151 of the defendant in which Wells, Meissel & Peyser, Inc., is designated by the defendant as its *general agent,* and is approved by the defendant acting through its second vice-president. The contract in the opinion of the court is unambiguous and binding on the defendant. This view is further borne out by the fact that the application filed

by the plaintiff's assignor with the Insurance Department of this State seeks a certificate of authority to represent the defendant as a life insurance agent and this application bears the following legend:

" COMPANY APPROVAL

" This application is approved and the certificate of authority applied for is requested.

" NATIONAL LIFE INSURANCE CO.

" by E. D. FIELD, *2nd Vice President.*

" Date of Approval, Nov. 6, 1931."

The documentary proof in this case points to the fact that the defendant not only held Wells, Meissel & Peyser, Inc., out to the plaintiff's assignor as general agent having authority to appoint agents to solicit life insurance on behalf of the defendant but went further and it, the defendant itself, approved of his employment. In view of the foregoing and on the opinion of *Anderson* v. *English* (105 App. Div. 400), I am constrained to hold that the defendant and the plaintiff's assignor entered into a valid contract employing the plaintiff's assignor as an agent of the defendant.

Moving on to consideration of the second question before the court, the question of whether or not the applicant for insurance obtained by the plaintiff's assignor was an insurable risk can best be determined by an inspection of the documents submitted on the trial and the testimony adduced. In this connection a perusal of the bulletin of the defendant issued by it and to its agents including the plaintiff's assignor is very enlightening.

" NATIONAL LIFE SERVICE

" AVIATION — IMPORTANT

" The heavy extra premium necessarily charged by the companies which will rate up aviators makes it impractical, if not impossible, for the majority of aviators to obtain life insurance. We have, therefore, had many requests that we issue policies on the lives of those who use the airplane frequently for business or pleasure under which the Company would be exempt from liability in event of the death of the insured as the result of aviation.

" In response to this demand, we are now willing to issue, in states where the laws do not prevent it, policies for applicants in cases where a substantial flying hazard exists under the following agreement, which will become a part of the policy:

" AVIATION AGREEMENT

" Attached to and made a part of Policy No....................
upon the life of... ...........................................

" Death from aviation hazards is a risk not assumed under this policy. This policy is issued on the express condition that if it

shall become a claim by death of the insured and if such death shall have resulted from operating or riding in any kind of aircraft, whether as passenger or otherwise, the liability of the Company under this policy shall be limited to the full reserve on this contract at the time of death, according to the American Experience Table of Mortality, with three per cent interest, and the Company upon payment of this amount to the person entitled to the proceeds in case of death shall be discharged from all other liability hereunder, anything in the policy to the contrary notwithstanding. These provisions shall apply also to any paid-up policy or extended insurance that may be issued or put in force in accordance with the non-forfeiture provisions of this policy.

" Under this agreement the aviation risk is entirely eliminated from coverage under the contract, but in all other respects we write our regular policies covering death from other causes. In the event that death is the result of aviation, only the reserve under the policy will be returned.

" The requests which have been made that the Company issue policies with the aviation risk excluded indicate that this new departure offers an added opportunity to our field to secure a substantial amount of new business.

" The regular Form A application should be used in these cases, but the agent should invariably add to the description of the policy being applied for the words ' with aviation risk excluded.' For example: Life, with aviation risk excluded. It will be necessary for the applicant to complete our Aviation Questionnaire and submit it with the application.

" This will not affect the Company's present practice of accepting risks at standard rates where the aviation hazard is not great.

" This agreement is authorized for use at this time (April 19) in the following 27 states only: Alabama, California, Connecticut, Delaware, District of Columbia, Georgia, Idaho, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Missouri, Montana, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Utah, Virginia, Vermont, West Virginia, Wisconsin, Wyoming."

It was under the terms and conditions of this bulletin that the application for insurance was solicited from Byrd. Byrd, the defendant conceded on the trial, passed an acceptable medical examination conducted by the defendant's doctors and was satisfactory from a medical point of view. He filled out the application on the defendant's form of application and signed the aviation rider as set forth in the bulletin. He was, from the evidence, a member of a fine old American family and a successful business

man. The only evidence to the contrary was testimony by officers of the defendant that the committee on selection of the company received communications to the contrary. These communications were not offered in evidence or their contents revealed. In view of the positive proof of his character, moral, physical and financial, Byrd must be deemed an insurable risk. This question of fact must also be resolved in the favor of the plaintiff.

The third question to determine before a decision can be arrived at in this case is, Did the defendant reject the application of Byrd because of the aviator's risk? In determining this question it should be remembered that the application for insurance may be rejected by a company when in good faith it believes that the applicant is not an insurable risk based upon information received by the company as to his personal character. The rejection in this case was according to the rejection slip stamped on the original application (Plaintiff's Exhibit 6) made on November 23, 1931. The correspondence in evidence shows conclusively that Byrd was rejected because he was the owner of a plane and that the company had decided not to insure an owner; this deduction is borne out by the revised statement issued by the defendant on December 1, 1931, in which it stated that owners of aeroplanes, officers, etc., of aviation companies cannot be accepted even with the agreement excluding the aviation risk. In view of this rejection, the defendant is estopped from thereafter assigning any other cause of rejection. (*Littlejohn* v. *Shaw*, 159 N. Y. 188; *O'Meara* v. *National Park Bank*, 239 id. 386; *Jauch* v. *Powertown Tire Corporation*, 212 App. Div. 326, 328.) The defendant having broken the contract of employment and refused to issue the policy, the plaintiff is entitled to judgment. Under the contract the commission schedule provides for the payments of commissions at the following rate: fifty per cent on the first annual premium and five per cent on the premium due from the second to the tenth year, inclusive. In view of Byrd's age at the time of the application, I hold that under the American mortality tables his expectancy of life would be more than ten years, so that the plaintiff would be entitled to all the commissions set forth in the defendant's schedule of commissions.

Judgment is directed for the sum of $3,427.21. Thirty days' stay and sixty days to make a case.